24-1040. Alright, we'll hear first from Ms. Glashauser. I gather you've reserved two minutes for rebuttal. Yes, Your Honor. Good morning. Good morning. May it please the Court. Patrice Runner's astrology company sent its customers many things. Booklets, recordings, talismans, and rings, along with letters that told stories of meeting with shamans, predictions of good luck, and hope. What his company did not send was supernatural magic. The failure to provide magic is not criminal fraud. Is that just because these particular customers or victims, depending on whose perspective you take, were particularly gullible? If he was offering something that everybody in this room agreed existed, or something a little more believable, like a cure for an illness, or a vitamin that would make him feel better, is that what's at issue here? Is that it's sort of so silly that nobody could believe it and these aren't counterfeit because it's just ridiculous? Is that the theory? No, Your Honor. The theory is that any possible harm is intangible. It's to somebody's… where they said they would send some valuable objects and instead sent junk, how can you say there wasn't harm as to those? Now, you know, I might hear you with respect to that we're sending psychic information or something of that sort, but as to the objects, there clearly was something sent that was less valuable than what was said would be sent. Now, whether a conviction arose is enough to uphold the conviction of the others, or whether, you know, some can't fall, that's another question. But are you really arguing that as to the objects there wasn't a problem? Yes, Your Honor, because there is no difference in objective property value between what customers were sent and what the government says they should have been sent. The difference is that the statue did not come from a shaman at the edge of the world. That difference is intangible. It's the supernatural. Weren't there other things that they paid for, they thought they were getting, that they didn't get? For example, they thought they were going to get personal attention and letters from psychics, and instead they got computer-generated letters with somebody in the office writing something by hand, pretending to be a letter from a psychic. Why isn't that getting something that they — not getting something that they paid for? Because the difference between those items is merely the magic. The government never presented any evidence that there's some objective value. Well, they thought they were getting a letter from someone who was a world-renowned psychic, and they didn't. That's right, but that is not — You don't think that matters? No, because Simonelli and the Supreme Court — Well, is that something we have to wait for what the Supreme Court tells us and accuses? I mean, our own cases say it's enough, but the Supreme Court has this case where they may tell us that more is needed. Now, again, I can see that maybe with respect to the psychic information. I have problems seeing how anything they say would affect the objects, but that's — So the Supreme Court has already said this. In Simonelli, the court was clear that the criminal fraud statute in federal court is narrow and relates to traditional property interests. Here, the only possible difference in value that the government points to is the supernatural, the intangible. So the Supreme Court has already made that clear. I agree that Cusicus may make it more clear that that case is outstanding, but as the law stands today, there is no fraud here because there's no traditional interests. Suppose for the moment, and you don't need to agree with me, that you agree with me that as to the objects, there was a financial difference, so that even if we're talking about financial loss as to those there was, would the conviction have to be flipped because some of the convictions depended on both the financial and the information about psychic? Or can we just say the conviction stands because of the objects? So agreeing with you for the moment, the conviction would still need to be vacated because the jury was told both in summations and instructions that they could rely on the mere fact that the letters didn't come from a psychic. So the jury's verdict would have been based on — or we can't know whether it was based on the portion that Your Honor is agreeing was not fraud. How is this different than a memorabilia case? So if someone tells me they have a baseball signed by — I'm the only person who would value a baseball signed by Rich Gedman, but a baseball signed by Rich Gedman who was a catcher in the 80s, I'm going to pay more for that because I think it's so cool that Rich Gedman signed it. If really like Rob Gorman signed it, wouldn't that be cheating me if I paid more thinking it was from Rich Gedman? Yes, because signed baseballs have objective value. But really they don't. Nobody in this room is going to pay more for a baseball signed by Rich Gedman than Rob Gorman, only me. So maybe even if I'm the only one who wants this famous psychic to sign my letter, isn't that still misrepresentation that it induces me to spend the money I wouldn't otherwise spend? So this Court has been clear that fraudulent inducement is not enough. You've said that in Shellef, you've said that in Starr, in Regent. But it's not just being induced. It's not getting what you paid for. You're paying for a signed letter from a world-renowned psychic, Marie Duvall, and instead you're getting something signed by a computer. So you're not getting what you're paid for. Why isn't that fraud? Because the difference is merely the intangible. Criminal fraud, the Supreme Court tells us in similarity and cases before that, must be a harm to a tangible difference in value. Here there is no objective value. Aren't all things that have autographs of famous people, don't they have tangible value? I mean, they sell for hundreds of thousands of dollars. There are collectibles that have objective, tangible value. The government introduced zero evidence in this case that this person had... There was evidence that Marie Duvall had a worldwide following with millions of followers. There wasn't really, Your Honor. There was no information about what makes a psychic a, quote, real psychic, what makes somebody who sends a letter who's not a real psychic different, and what value difference there is. That evidence is not here. Now, is that an argument that this is really mere puffery, that everybody knows that there are psychics and non-psychics, and it's all nonsense, and that this is really like the thing at some kind of fair where somebody's standing there and saying they can tell you what's going on, and we all know it's baloney. Sure. Isn't that the nature of your argument? It's not that it's puffery, but it is that individuals' idiosyncratic or personal beliefs in a value or wanting to believe in magic or wanting to suspend their disbelief, that isn't something that we can criminalize as fraud because it's not tangible. So it is different than things that have objective, tangible value, and that's really what's different in this case from a collectible, what's different from an autograph, something that someone can turn around and resell. It's also important to remember here that people paid $5 to $40 for these items. They were not represented as being somehow objectively valuable in the monetary sense. These were items that were sold as inexpensive things, and the story— So people wound up paying several thousand dollars because they kept doing it over time. Yes, because they liked what they received. So these customers— They thought they were getting something, and it turned out they didn't get what they thought they were going to get. The thing they didn't get was the supernatural. They were happy with the objects they received. They were happy with the letters of inspiration and hope. They were happy with the lucky numbers because they either believed it was just kind of fun to believe or sincerely believed that these numbers or this day would bring them good luck. They have a First Amendment right to believe that, to engage with a company who sells that, and there surely are civil regulations or state criminal laws that might address other problems here. The Supreme Court is clear that the intangible loss of some belief is not criminal fraud. All right, thank you, Counsel. You've reserved some time. We'll see you in 10 minutes. Thank you. We'll hear next from Counsel for the Government. Good morning. May it please the Court. John Burke for the United States. Appellants contend there is no evidence of intent to harm the victims, and the only loss suffered by the victims was the loss of magic. To the contrary, as the government told the jury in its opening and proved at trial, this case is not about whether magic or psychics are real. This case is about Patrice Runner lying to his victims about every important aspect of the bargain he was offering and doing so in order to take their money. He lied about the psychic services offered in his letters, which were not performed by Maria Duvall or any psychic at all. He lied about the products offered in the letter. So how do you respond to the argument that these things were, putting aside magic for the moment, were intangible? It didn't really matter who was signing this letter. It was a letter that was going to give hope, that kind of thing. A couple of responses, Your Honor. It mattered to the victims who testified at trial. Multiple victims said they would not have purchased if they knew their responses were not going back to Maria Duvall, if they knew the letters were not coming from her. But is, with respect to the objects, I'm inclined to agree with you, but with respect to the rest, isn't it so much like what in any number of other situations we say, oh yes, but basically people go along and know what it is. In the fair, in any number of products that say this will do all sorts of great things for your toes, well, it actually does something for your hair. And with any number of cases we say that isn't enough. And if that is so, isn't the whole thing sufficiently tied together that even though a conviction on the objects might stand, we'd have to vacate and remand? No, Your Honor. The material misrepresentations in this case, there were many, and the jury only needed to find that Mr. Runner made material misrepresentations in order to take his victim's money. The fact that in this hypothetical, if you didn't agree on the information, the studies, the letters, but on the objects, that was a separate material misrepresentation that was the basis for the mail fraud charges and the conspiracy count. Now, Mr. Runner thought that it was important which psychic these letters were coming from. He and his employees actually did A-B tests. This is in the record at Appendix 177, co-conspirator Mary Thanos talking about this, and 507 to 509, co-conspirator Phil Lett. They would send out two versions of a letter, one from Maria Duvall, one from Patrick Guerin. Whichever one brought in more money from the victims, then they would go with that one. They also A-B tested other lies, such as how much money the psychic had seen a person winning. And again, whichever one brought in more money from the victims, whichever lie, then they would send that letter out in the future. So this was not a case where Mr. Runner just said whatever he wanted in the letter and didn't think it had any real impact because people were just suspending their disbelief. There were discrete, specific lies, and the scheme would pick which one. Do you think we should wait for the Supreme Court inquisition to tell us more clearly just exactly what is wanted? Or are you arguing that what they've already told us and what our own cases say is enough? Yes, Your Honor. I think this Court's precedent, Supreme Court's case in Simonelli and other cases, set sort of outer boundaries for what constitutes mail fraud and wire fraud and what does not. This case is right in the center of what is mail fraud. Specific lies to the victims told over and over and over again for the purpose of taking their money. And the charge to the jury, even though it was not the charge that they asked for, which was a correct charge, and so it might have been wiser to give it, but the charge that was actually given was adequate and correct. That's correct, Your Honor. With respect to the charge they requested, the district court found it might be confusing to the jury without the specific facts and circumstances of those cases. But the concept of intent to harm needing to — of, excuse me, intent to defraud needing to include an intent to cause loss or harm, that's already included in the Court's charge. And specifically, in defining intent to defraud, the Court said intent to defraud is to act knowingly and with specific intent to deceive for the purpose of causing some financial or property loss to another. And the Court went on to say, as such, it is not enough for the government to show only that the defendant intended to deceive the victim. That is an accurate statement of the law, and the concept that the defense was asking for, that there needs to be loss or harm to the victim, is included in that portion of the instruction and in other places. Counsel, let me ask you about loss amount. It looks like the PSR and then the Court adopted every dollar that went through this business. Even if we agree that many of the customers or victims were defrauded, even if we believe that, which might be sufficient to uphold convictions, it appears that there were people who said, oh, this will be funny. For my cousin's birthday, I'm going to get her a psychic letter. I know this is silliness, but it's a joke between us. Or I'm going to get this opal that was, you know, it was a sapphire, I think, some stone that was dug out of a mountain in Moldova, right? And they were doing it for the fun, what the defendant's focus is. This sort of broad swath damages analysis, which is every dollar that went in this company, is attributable to fraud. I understand there's a harmless error argument, but I'm having a hard time seeing why that's not error. Yes, Your Honor. The government argued and the Court accepted and I think repeated during the sentencing hearing that you have satisfied customers, but they were still defrauded. In other words, the lies were. But the fraud comes from the not getting the benefit of the bargain. So let's take myself as the hypothetical customer that said, this will be really funny. I'm going to get this as a joke. And I was thrilled with it. It was so silly when I got it. I was like, that was worth every penny of my $29.99. How am I a victim? How is my $29 attributable? Your Honor, I'm not familiar with evidence or any information in the record about a customer like that. But you said some customers were satisfied. Well, what the defense pointed to to make the argument that some customers were satisfied, and this is in the defendant's sentencing memorandum, it's docket 122 in the district court, were responses to the government's questionnaire. And they called out 12 responses. But isn't your better argument that the court, while it may have started with a total loss, then said, I'm not going to do that. I'm going to give an amount which seems to make sense to me, which is much, much lower. So instead of trying to argue that it could have done this in the face of some people being satisfied, that what the court actually did was, in effect, take into account, so that any error in starting from the total amount was harmless. Isn't that a better argument? Well, two responses to that, Your Honor. I think the initial question is, was there error? And in this instance, it would need to be clear error, because it was a factual finding, what was the loss in this case. And just going back very quickly to the questionnaire responses that the defense focused on, multiple people said no financial impact, no financial impact. One person said, Ms. Duvall helped me in many ways and aware of an awakening within me. Also Mr. Guerin. I had a lot of things going on with me. I thanked them to the fullest. Now, that person, even at the time that they receive the government's questionnaire and respond to it, is still under the false impression, intentionally created by Mr. Runner, that they were in touch with this world-renowned psychic, that they were providing personalized information, et cetera. And so the government argued at sentencing, and the court acknowledged that those people may have had a neutral or even somewhat positive feeling about what happened with these letters, but they had still been defrauded because they were lied to from the beginning. Now, with respect to the harmless error argument, yes, Your Honor. The district judge departed or varied downward, excuse me, from a range of life in prison to ten years. She expressed disagreement with the sentencing guidelines, said they were way, way off, and other statements of just complete disagreement with the effect that the loss amount was having on this sentence in particular. And her variance was so large that the loss amount that would support that number, if we were going to recalculate the guidelines, is somewhere in the hundreds of thousands of dollars. In other words, the number of levels in the sentencing guidelines would need to come down, I believe it's 16 levels, in order for her sentence to be a guideline sentence. So she was considering other factors, 3553A factors, in imposing a sentence that was the result of such a large downward variance. So we do believe it is harmless error, even if this Court were to find it's error and clear error. Thank you. Thank you, counsel. Thank you. Ms. Glashauser, we'll hear from you on rebellion. The government just pointed to a customer that had a personal awakening because of these letters. That's an intangible benefit, just as any harm they are pointing to for the people that were unhappy at the time of trial was intangible. It was to their belief system. That somebody has an idiosyncratic belief that makes this better or worse for them is not criminal fraud. The government has cited zero cases to this Court where it would be. What the government says is there were lies. This Court has said repeatedly, lies are not enough. That's Starr, that's Regent, that's Shellop. The government says money was exchanged. Money is not enough. Money is exchanged in Starr, Regent, Shellop, and Simonelli. That's not enough. The victims there got what they paid for. Isn't that a significant difference? They did here, too. The government only points to the lack of psychic magic as what they didn't receive. There was no evidence that they didn't get something of value, something with traditional property value, which is what the Supreme Court tells us in Simonelli has to be. If you say something will have some value and it has much less value on the market, isn't that enough to meet the test? Even if what you got turns out to be something that satisfies you, if something If you say to somebody this is worth a hundred in the market and it's worth ten and the person gets it, they happen to be happy with it, but they've still only gotten ten in value when you promised them a hundred. Right, and you're talking about a market, so it sounds like this is something that has objective monetary value. But some of these things would have had if they were what they were described to be, as unique things found. But that's not true, and there's no evidence that it's true. For example, the government You say there's no evidence of that. Well, there were rings that were sapphire rings that were not from Paraguay or from a shaman, but from Party Mart. But there was no evidence that they weren't sapphires. They were actually sold as sapphire rings. The government doesn't try to prove they're not sapphires, and there was no Well, they were sold for like $2 or something, which is Sapphires are not expensive. Indirect evidence that it wasn't a sapphire. It isn't, Your Honor. There's a reason the government didn't introduce evidence that they weren't sapphires, because sapphires actually are not that expensive, especially when bought in bulk. But the point is the government introduced zero evidence of that. They did not argue that it was material, either to the district court, to the jury, or to this court. The government is arguing that what is material is the lack of supernatural. They call it psychic. But there's no definition of that. That's not what the government is arguing. You keep saying that, but the government is not arguing that this was really supposed to be magic and it wasn't. They're saying it's supposed to be psychic. So you're right. I'm using a different word for psychic. But they say psychic. They never define psychic. It does not have an objective definition in the world. It does not have some tangible property value. That's what they haven't pointed to. If I may just briefly on sentencing, Your Honors, there was no factual finding about loss. The court didn't make one. The court said that — What about the harmless error analysis? Right. The government says that if you recalculated it, the loss would be in the hundreds of thousands as opposed to $150 million. It was never calculated. So that is pure speculation. What the defense did was introduce evidence of satisfied customers. The defense pointed to the acquitted conduct, which the court seemed to agree with but then didn't account for. And the defense said, quoting this court, there has to be some crude estimate of the actual loss in order to proceed. The court did none of that. So that is error. It is not harmless. The fact that the court gave a variance in the sentence doesn't make it harmless because the variance might have been much larger had the guideline calculations started out much lower because the guidelines are our anchor and our starting point. So that, too, is an independent reason to send it down. Thank you. Thank you, counsel. Thank you. Thank you both.